Good morning, Your Honors. Patrick Hull on behalf of the appellant, Mr. Herrera-Chiang. May it please the Court. Does he see the light of day? In the context that I just made that statement, it's offensive and it's disrespectful. And I mean no disrespect to counsel. But that's exactly the words that the trial judge used to talk to defense counsel and to refer to the defendant when they were talking about whether he should take a plea in this particular case. And I reference that, and I do it in a rather dramatic fashion, simply to emphasize that the words that are used by a trial judge, the person that is sitting as the figure of authority, the most powerful person in the courtroom, the words that that judge uses are significant and carry meaning and imply messages. Well, you weren't the lawyer that was with Mr. Herrera-Chiang, right? I was not. At the time. I was not. That lawyer wasn't nearly as troubled as you are. In fact, if anyone was a little bit troubled, it was the prosecutor at the time and said, well, you know, maybe we just better make sure that he wasn't influenced by the words that the judge said. Right? I believe so. And that's why the government in their brief. So maybe they did see the light of day. And I'm wondering whether Mr. Herrera-Chiang's lawyer saw the light of day. Well, it's certainly a fact question. But in the context provided, our position is that it's improper for the trial judge to be engaging in that type of discussion. Well, I'm assuming you're correct. Is there anything – and there was a time period that was a span here that Mr. Herrera-Chiang didn't immediately take the plea. There was – so there was some time break from everything. And is there anything that can ever be done to vitiate a comment that was improper, or does it just forever just sort of stink up the whole plea? I don't know the answer to that, to be quite candid. I believe in the circumstances provided that – I mean, to distinguish this, and I know counsel has cited a case referring to the colloquy that the courts are encouraged to engage in when someone admits that they have been taking medications. And I would submit that that's a totally different type of inquiry that should be conducted at the time because we're not – you're talking about physical characteristics and you're talking about a short-term effect of medications on a defendant, something that could perhaps be remedied. And they want to make sure that he understands what's going on. Well, let me posit this to you, though. I know that your client faced, if he were convicted after a trial and convicted of everything, and there seemed to be quite overwhelming evidence against your client. What was the maximum exposure compared to the plea deal? I believe it was life. Life. And he got? He got 15 years. Okay. Might it – having been a trial judge myself and watching people – now, it's different in State court, and you can say kind of whatever you want, but is it shocking to you that sometimes, as a judge, when you see someone looking down the barrel and you know that if they're convicted of everything that you're going to have to lock them up for the rest of their lives and they have an opportunity where they can see the light of day, as it were, that a judge wants to make sure that the person really understands what they're looking at? Because later, as the judge, when you have to come down on someone, the first thing that they say after the jury trial is, oh, can I take the plea deal now? Or, well, no, it's gone. So if – I mean, maybe the judge was a little concerned and wanted to make sure that this guy knew everything that he was looking at. Perhaps, Your Honor, but it should be conducted in a neutral manner so it's not leaning towards one side or the other. And so a comment like, does he see the light, is not a neutral manner. And the comments overall that were taken and made by the court at the time, I don't believe were in a neutral manner such that it was assuring that the defendant knew that he had certain opportunities to have plea bargains in a case. I mean, it talked about that at the first pretrial conference, the judge asked the question, is there no possibility that it can resolve itself short of trial? And, of course, my tone and the tone of the judge at the time is not obviously in the transcript. But the no possibility is a different question than where do we stand with plea negotiations? Is there going to be a plea in this case or not? A more neutral question. And I can go through every one of the comments that the judge made, in my opinion, led the defendant to the conclusion that he needed to plead guilty because the judge was concerned about the case. Well, but does it make a difference that he pled guilty in front of a different judge than the one that made the comments? I don't believe so at all because the ultimate trial judge, the ultimate senator, was that same judge who made those comments. And so I don't think that that interspersed some type of neutrality to the fear that the defendant had that if he proceeded to trial in front of that particular trial judge, he was going to get life in prison. And I think that the judge communicated that to him in some of the comments. And I urge the Court, and our position is that it's the cumulative effect of all of the comments made over a series of pretrial conferences that had this effect on the defendant. I'm not trying to take any particular comment in isolation. I encourage the Court and I urge the Court to consider all of these comments in the context. But he made comment about how he had reviewed the trial brief and he seriously wondered if there's any possibility. And he was interrupted by defense counsel at the time. But when you're talking about seriously wondering about something,  And again, coming from the authority figure on the bench, I believe that the message was that he needed to take a trial. And then he's engaging in this dialogue on the record about 23 counts. I don't know if anybody has analyzed the guidelines to figure out what the results would be. But doesn't U.S. v. Thompson stand for the proposition that you're allowed to compare the sentence that a defendant would face if they went to trial as opposed to the sentence if they pleaded? It certainly does. But the trial judge in this case, I believe, went further than that, talking about the substantial amount of the evidence that he had seen. And so he's talking about at two different occasions, first at the first pretrial and then later on at the second pretrial where he's talking about it. And he's talking about the weight of the evidence. And he's talking about realistic opportunities for him not to spend the rest of his life incarcerated or most of it. And when he includes the word realistic opportunity, I think as well as talking about the evidence, what's before him at this point appears to be rather significant or substantial. Well, he had heard the motion to suppress, right? The judge had heard the motion to suppress at some point. That was a little by the second time. By the second pretrial conference he had. By the first pretrial conference he had not. Well, let me ask you this. You can probably take the fifth on this. But how would you term the state of the evidence, the strength of the evidence here? Because this seemed to be this defendant, you know, they have they seem to have pretty substantial evidence against him. Well, he confessed. They have conversations with an undercover. And they have his wife spending the money that he got in marked bills for performing something that he shouldn't have done. I would, well, first of all. Pretty strong case. I would not characterize it as what the evidence was at that point in time. There were disputes regarding the credibility of the government's informant. There were concerns that Mr. Herrera, the appellant, had regarding his counsel. In the context of that second, his appointed counsel had referenced the fact that the appellant was searching for a new trial lawyer. And when the judge was questioning him about who the defense witnesses were, where was the defense witness list as required by the trial judge, he couldn't answer some of the questions. And so the judge made the comment at that point in time that, you know, this case is going to go proceed to trial. It's too late for a new counsel. I raise that because in evaluating the evidence and looking at the inferences to be drawn, that's not really in the record before Your Honor. There is a suppression hearing transcript. Right there is a trial brief. But really what the evidence is was not before the court and is still not before the court in this case. I recall you have less than a minute left and you haven't addressed what I think is an equally important part of your appeal. In other words, even if we agree with you that the trial judge participated to a degree prohibited by Rule 11, you still have to show prejudice. What's the prejudice? Well, Your Honor, I think the prejudice was there were two statements by trial counsel that there was an impasse, both at the first pretrial conference and at the second pretrial conference, that they couldn't reach a plea negotiation and that he wanted to proceed to trial. And so the prejudice is that he entered his guilty plea when he intended to exercise his jury trial rights and had made clear to his defense counsel that he intended to do that up until the point that the comments were made. So the prejudice, the burden, is carried by showing that what? There's evidence that supports the position that if the judge didn't make these remarks, he would have gone to trial? Is that what it amounts to? Well, I think it's a reasonable probability that but for the violation he would have exercised his right to go to trial. I think that's the standard under Davila. And I believe that that's the prejudice that we have shown and has demonstrated on the record. Now, how do you show that? Just because what, the trial lawyer said at one point what, it seemed like he didn't want to plead or something like that? Well, there were two comments. One was at the first pretrial conference where he said that they were at an impasse in plea negotiations. And the second was at a point, was in the second pretrial conference where he said that he had talked to him repeatedly, and I'm paraphrasing at this point, but essentially the defendant wanted to go to trial. And so I think that that's the record that reflects what his intentions were up until the point that these comments were made. Let me ask you a question on this point. There's, for instance, a suggestion that in between the time of the scheduled comments and the decision to plead, there was a further event which was sharing with the defendant the government's pretrial statement which showed the evidence. Is this the kind of a question that should be resolved following a hearing as to the reason? Or are we supposed to, I don't know whether we assume that he saw it, whether that influenced him. Should we make that decision? As far as I know, the cases so far have all just done it on the record without any inquiry, without any evidentiary hearing as to why the defendant changed his mind. What's your view on whether that would be the proper procedure? We have posed it in the alternative, Your Honor. We have suggested that on this record that the court can reverse. But we also have suggested that the matter be remanded back to the court for factual findings. And frankly, before filing opening briefs, we prepared a motion asking that the matter be remanded back to the trial judge. I'm recusing that trial judge on these fact findings. Have any cases proceeded in that manner before? I'm not aware of any, Your Honor. Thank you very much. Thank you, and may it please the Court. My name is Dominic Lanza. I represent the United States. Judge Tshishima noted earlier that under Davila, there are two different showings that the defendant needs to make on this record. First, that there was actually an error under Rule 11c1, and second, that it's reasonably probable that the error actually caused him to plead guilty rather than go to trial. We don't believe he's made a showing on either prong. I will acknowledge to the court that I think the question of whether there was a Rule 11c error is a closer question in this case. I think that the judge's comments, when viewed in proper context, were not attempts to force the defendant to plead guilty. But I'd really like to focus on the second part of the inquiry, because I think that is by far the strongest part of our argument in a showing. Well, but the prosecutor had a little concern at the time, because the prosecutor said concerning what should we make of the fact that the prosecutor was concerned with the district court's comments concerning the strength of the evidence, so much so that the prosecutor encouraged the district court to require the defendant to confirm at the outset of the hearing that his decision to plead guilty was voluntary and free from coercion. I was that prosecutor, Your Honor, and what we should make of that is that these comments, the fact that I raised that shows that these were close to the line under Rule 11c-1, but it doesn't shed any light on the second part of the inquiry, whether there's prejudice. And I think that that really dovetails to the question you asked counsel earlier. You know, when this court hands down opinions, it needs to have an eye toward what's the actual practical effect on district court judges' ability to administer their dockets. Here, the district court, it was raised to him, hey, there might be a problem under Rule 11c or at least an issue that we need to flesh out further. And the district court, to its credit, didn't just let that go by. It tried to address it. It gave the defendant, sua sponte, another chance to say, hey, I made some comments earlier that maybe they're close to the line. I want to make sure that I'm proceeding over a fair trial here and they didn't influence you. And the defendant told him point blank, I wasn't influenced. It's the same thing that the defendant told to the different judge who took his plea, to the mitigation specialist, to the probation officer, I'm pleading guilty voluntarily because I am guilty, not because I was coerced. And under Davila, when there's this burden on the defendant to show prejudice, it's impossible to think that he somehow met his burden of prejudice under this record when the only record evidence is his own words saying he wasn't prejudiced. What about his lawyer? His lawyer also reaffirmed what his client said. When at the sentencing hearing, after Mr. Herrera said, no, I'm pleading guilty because I am guilty, his attorney, Mr. Cepelo, then went on, reaffirmed that and said, that's right, he's pleading guilty because in my discussions with him, he wants to take responsibility for his actions. He's contrite. You really believe he was contrite and that's why he did it? Yes. He suddenly saw the light. And this is another thing that's really interesting about this case that distinguishes it from all these other Rule 11 cases. Judge Callahan talked about the strength of the evidence. Not only was the evidence strong, but the defendant's position leading up to trial was not, I'm innocent, you've got the wrong guy. His position was, yes, I admit I took bribes and I'm guilty of the federal crime of bribery, but I thought the people bribing me were alien smugglers, not drug traffickers. That's reflected on two different points in the record. First, it's in the second volume of the defendant's excerpts of record at page 18. In the defendant's motion to admit his polygraph results, which was filed before all of these challenge comments, defense counsel said, my client has pled not guilty, but in reality, he's guilty of taking bribes, but he thought they were alien smugglers. And again, at the suppression hearing when he was being cross-examined, he admitted, yeah, I violated my oath and I took bribes, but I thought I was simply helping alien smugglers. That is not a legal or factual defense to the crimes that he pled guilty to. The only thing that was in the mix in this case was whether he was helping drug traffickers. He knew they were drug traffickers, and that, therefore, should trigger these cross-references under the sentencing guidelines. And I think that's also important to note. Judge Reinhart asked about, well, what's the proper remedy here? Are we stuck with the record? I have two answers to that. First, yes, we are. You need to decide this case on this record, not remand. Davila makes that point clear, that the court needs to make a whole record assessment based on the existing record, and then after Davila and Kyle, this court reaffirmed that. But separate from that, whether or not the record reflects that after the pretrial conference, Mr. Herrera was actually shown the trial memo, there is a different point. During the change of plea hearing, at the outset of it, Judge Logan asked defense counsel to explain the factual background on how the plea was reached. And the defense counsel then goes in there and says, since the hearing in front of Judge Rosenblatt, we've gone back and forth with the prosecutor, and now they've made some changes to the plea agreement that my client is pleased with and thinks are reasonable. So the record in this case shows that after the last hearing in front of Judge Rosenblatt, there's then further negotiations. The defendant is extracting favorable changes to the plea agreement. And what are they? It's not in the record. My best recollection of what they were is that, again, this issue was the defendant's knowledge of whether or not he was helping drug traffickers. Originally, the plea agreement that had been presented to him said point blank. I knew these were drug traffickers and drugs were coming in. The ultimate plea agreement that was reached, which is in the record, sort of adopts a Pinkerton theory of liability, which is it was reasonably foreseeable to me that my co-defendant, Mr. Lopez-Garcia, was in cahoots with drug traffickers, and therefore I acknowledge that legally I'm responsible for all the drugs he brought in. So if the Court has no further questions, we'd ask this Court to affirm. Do you want him in here for a vote? Your Honor, it's the points that I would raise at this point, and perhaps to answer your question, Justice Callahan, is that the type of inquiry that's needed is a fact-specific inquiry in light of the comments that have been made. The trial judge simply said, you took an oath in front of the magistrate judge, and you remember the questions that were asked, and would you give the same answers today? And if I asked you those same questions under oath again today, would you give those same answers? He didn't ask specific questions. He didn't have a transcript of the proceeding before him. He did not ask the effect of, what did you think I meant when I said, did you see the light of day, or does he see the light of day? He did nothing to mitigate the intimidating effect that those comments had on the defendant. And regardless of the prosecutor's assessment of what the evidence in this case, that's why trials are for, because there were disputes regarding that. I dispute that the record reflects that there was this change of heart. I think there was intimidation by the defendant, and I think that's what the record substantiates. Mr. Hall, if Mr. Lenz is correct, that under Davila, we have to decide this question on the record before us. And it's your burden to show prejudice. Tell me again, I mean, what showing is there in the record of prejudice? Namely that, I guess, you know, he would have gone to trial. Well, I think the only prejudice that there could be where you're alleging a Rule 11 violation and that intimidated someone to plead guilty, I think the only prejudice that you can theoretically show is that a person was intending to go to trial. And what's the showing that he would have gone to trial? The showing is the comments made at the first pretrial, at the second pretrial. The trial was scheduled to commence on April 16th. But what was the comment? The comment was, well, I think, Delores, my client and I are at an impasse, but I'll talk to him again. Isn't that what it amounted to? It did, Your Honor, but then later on, at the second, on April 8th, he still is reiterating at that point in time on the judge's talking about witness lists and jury instructions, he reiterates that he's not prepared to accept a deal and that he essentially wants to go to trial, and that they have talked further and that he wants to go to trial. And I would emphasize those comments with the plea occurring four days later on April 12th. Well, what do you make of Justice Ginsburg's opinion in Davila? She says that the plea took place three months after the remarks, and then she says, if the defendant pleads guilty right after that, the error would likely qualify as prejudicial. I assume that might suggest some sort of presumption or time relationship. But she then says, our essential point is that particular facts and circumstances matter. I'm somewhat at a loss as to how we're trying to determine the particular facts and circumstances without inquiring into what happened between the time of the discussion with the judge and the time, which is a comparatively short time, as opposed to three months in Davila. As to what happened during that period, what kind of discussion took place between counsel and the defendant? What credibility findings would be made about the events that supposedly took place? What kind of changes were made in the plea agreement? If he had gotten five years less, ten years, that might be significant. Whether it's significant to the explanations, to the theory, to the offense. I have a hard time knowing whether, A, there's a presumption if it's a very short period of time, B, what the facts and circumstances it was supposed to resolve are, without any evidence other than a record that was not made for the purpose of examining what the reason for the plea was. I suppose the rule, the violation, would never have any meaning if we said, well, if he then goes in and changes his plea and complies with Rule 11 and says, yes, I did it all voluntarily, nobody made me do it. If that were asked every time, you'd never have a case because they'd always say yes. So I have, my problem is how we really should make a determination. But I guess that's, I gather the government's position is you can't have an evidentiary hearing. That's prohibited. I'm not sure whether I'll have to look at the government's brief, whether there's any case that suggests that, and maybe no one else will be interested in that anyway. Perhaps, Your Honor. Certainly we could brief that particular issue. That's not something that I think that we addressed. We simply asked that the court remand it if they found that the facts were insufficient to reach the conclusions in this case. All right. Thank you. Thank you. Case just argued will be submitted. The court will take a brief recess.
judges: Reinhardt, Tashima, Callahan